OPINION
{¶ 1} Jermaine Green entered pleas of no contest to, and was found guilty of, one count of aggravated robbery with a firearm specification and one count of receiving stolen property. The court sentenced Green to eight years imprisonment. On appeal, Green advances three assignments of error, all of which pertain to his unsuccessful motion to suppress identification evidence.
 I. {¶ 2} Stated briefly, the facts are as follows. On January 3, 2005, at approximately 10:30 p.m., Ruby Starling was sitting in her father-in-law's Expedition in the Kroger parking lot located on Wayne Avenue in Dayton, Ohio, waiting for her husband, who had gone into the store, when two men hijacked the vehicle. Both Starling and her husband are deaf. One assailant punched Starling twice in the face and dragged her out of the vehicle while the other assailant pointed a gun at her. After her assailants drove off, Starling ran into the store, shaken and scared. Det. Joey Meyers was contacted to translate, using signing, for purposes of the investigation. Although he does not have any formal training, Det. Myers has been signing for over 29 years because both of his parents are deaf. After Det. Myers established that he and Starling could understand each other, Starling told him what had happened. Starling described the suspect that struck her twice and dragged her out of the car as a black male wearing a black-hooded jacket with big bushy hair sticking out. She described the other suspect as a black male wearing a multi-colored jacket with long braided hair. He had pockmarks or pimples on his face and pointed a gun at her. At approximately 2:30 a.m. on January 4, 2005, police recovered the vehicle and found Green inside. Green was arrested and a photo spread containing faces with similar attributes was compiled.
 {¶ 3} The following day, at approximately 9:30 a.m., Starling and her father-in-law, Todd Carver, met with Det. Mark Scott to discuss the hijacking. Carver offered to help with the interpretation, using sign language. Det. Scott accepted his offer. Det. Scott explained the photo spread procedure, but did not read the instructions to Starling verbatim. Det. Scott asked Starling to think back and try to remember what her assailants looked like and then see if they were in the photo spread. At no time did Det. Scott inform Starling that Green was in custody. The trial court found that Starling narrowed her choices to two and then chose photo #3, Green. However, Starling indicated that it would be helpful to see #3 in person. Starling was not asked to sign the photo spread.
 {¶ 4} On January 11, 2005, a preliminary hearing was held where Starling unequivocally identified Green as one of her assailants, specifically the one who had punched her.
 {¶ 5} Additional facts may be included in the discussion of the assignments of error.
 II. {¶ 6} "1. THE TRIAL COURT ERRED IN RULING THAT THE STATE OF OHIO COULD ADMIT THE IDENTIFICATION OF THE APPELLANT MADE BY STARLING TO DETECTIVE MYERS SHORTLY AFTER THE CRIME BECAUSE THE IDENTIFICATION WAS UNRELIABLE CONSIDERING THE TOTALITY OF THE CIRCUMSTANCES."
 {¶ 7} In his first assignment, Green argues that the trial court should have suppressed evidence of Starling's initial description of him to Det. Myers because Myers, as a member of the Dayton Police Department, was not an unbiased interpreter with no interest in the outcome of the case.
 {¶ 8} Notably, Green does not contend that Det. Myers is not qualified to communicate with a deaf person using sign language or to interpret the deaf person's sign language. Rather, he contends that Det. Myers was not an unbiased interpreter because he was a police officer. He points to Det. Myers' inability to recall all of the specifics of Starling's description of him at the suppression hearing 5½ months after the hijacking — which he asserts is "more than mere coincidence" — and to Det. Myers' failure to make notes of his contact with Starling, or a memorializing report thereof, thus "conveniently" making impossible an in camera inspection for inconsistencies between his notes or report, and his testimony.
 {¶ 9} There is absolutely no record support for either of these assertions and we summarily reject them. Indeed, Det. Myers stated that he couldn't sign with Starling and make notes at the same time. That Det. Myers forgot facts or failed to prepare a report for the purpose of undermining the proper administration of justice is supported, at best, by pure speculation.
 {¶ 10} Finally, Green argues under this assignment that the constitutional right to an unbiased interpreter requires the police in non-exigent circumstances to hire a neutral interpreter. Suffice it to say that, in our judgment, the circumstances in which Det. Myers interacted with Starling were not non-exigent. A car had been hijacked after its occupant had been struck and dragged from the car at 10:30 at night. Time was of the essence in obtaining information about the perpetrators.
 {¶ 11} The first assignment is overruled.
 III. {¶ 12} "2. THE TRIAL COURT FURTHER ERRED IN RULING THAT AT TRIAL THE STATE OF OHIO COULD ADMIT STARLING'S IDENTIFICATION OF THE APPELLANT IN THE PHOTO-ARRAY PREPARED BY DETECTIVE SCOTT AS IT WAS SO UNNECESSARILY SUGGESTIVE AS TO COMPROMISE THE RELIABILITY OF THE IDENTIFICATION."
 {¶ 13} In his second assignment, Green reiterates his argument — this time as to Todd Carver rather than Det. Myers — that Starling's selection of his picture from a six-picture photo spread was tainted because her father-in-law, Carver, interpreted for her, and because Todd Carver was not unbiased because he was Starling's father-in-law and himself a crime victim because it was his car that was hijacked.
 {¶ 14} Again, notably, Green does not challenge Carver's ability to communicate by sign language or to interpret sign language. Despite Carver's status as a father-in-law and crime victim (whose property had been recovered), there is nothing of record to suggest that Carver colored his testimony and the trial court expressly found Carver to be a "very credible" witness.
 {¶ 15} Green points to the fact that Carver testified that Starling positively selected photo #3 (of Green) after narrowing the six pictures down to two, whereas Starling herself testified she had narrowed the field to two pictures. This does not establish bias on Carver's part. Det. Mark Scott, who conducted the meeting where Starling examined the photo spread, also testified that Starling selected #3. Stating that he also found Scott credible, the trial judge found that Starling had made "a tentative identification on No. 3."
 {¶ 16} The facts of this case are a far cry from those inPrince v. Beto (5th Cir. 1970), 426 F2d. 875, relied upon by Green in support of this assignment. In Prince, the interpreter for the deaf-mute victim in a prosecution for burglary with intent to commit rape was the victim's husband. The potential for biased testimony by the interpreter was far greater in Prince than in this case.
 {¶ 17} Green next argues that the photo spread identification process was unduly suggestive because Det. Scott didn't read the printed instructions on the photo spread verbatim to Starling and didn't have Starling sign the identification page.
 {¶ 18} While it is clear that Det. Scott failed to read the instructions to Starling or have her sign the identification page, these shortcomings are not necessarily fatal to the identification process. The trial court expressly credited the testimony of Det. Scott and Todd Carver. Both testified that Det. Scott neither told Starling that her assailants were pictured in the photo spread nor told her whom to pick out of the photo spread. Green does not argue that the photo spread was itself unduly suggestive. By all accounts, Starling's examination of the photo spread was very careful and deliberate, and Starling testified that she had herself read the written instructions.
 {¶ 19} Finally, Green argues that because either Det. Scott or Carver told Starling a suspect was in custody, she was led to believe a picture of her assailant was in the photo spread. The court found that Starling's awareness that someone was in custody came from Carver, not Det. Scott. While it is true that this information might have heightened Starling's belief that she might find her assailant's picture in the photo spread, this information was not enough to make the identification process unduly suggestive. Anyone who is shown a photo spread would have an expectation of possibly seeing a picture of the person he or she is looking for.
 {¶ 20} The trial court reasonably concluded that the process was not unduly suggestive and the second assignment is overruled.
 IV. {¶ 21} "3. FINALLY, THE TRIAL COURT ERRED IN RULING THAT THE STATE OF OHIO COULD ADMIT AT TRIAL STARLING'S IDENTIFICATION OF THE APPELLANT FROM THE PHOTO-ARRAY AS THIS EVIDENCE CONSTITUTED INADMISSABLE DOUBLE HEARSAY."
 {¶ 22} Green's contention under the third assignment that Starling's photo identification of himself should be suppressed as double hearsay is based on the contention that Carver was not an unbiased interpreter.
 {¶ 23} Because there is no support for this contention, as discussed above, the assignment is overruled.
 V. {¶ 24} The judgment will be affirmed.
Brogan, J. and Valen, J., concur.
(Hon. Anthony Valen retired from the Twelfth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).